UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DIEGO HEREDIA,

            Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, DETECTIVE THOMAS DONEGAN, DETECTIVE THOMAS COZART, and P.O. JOHN DOES nos. 1-20,

            Defendants.

**MEMORANDUM OF DECISION AND ORDER**
19-cv-5227 (LDH) (ST)

LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff brings the instant action against Defendants City of New York, the New York Police Department, Detective Thomas Donegan, Detective Thomas Cozart, and twenty P.O. John Does (collectively, "Defendants"), alleging claims of false arrest and malicious prosecution pursuant to 42 U.S.C. § 1983[1] and New York law.  Defendants move pursuant to Rule 56 of the Federal Rules of Civil Procedure for summary judgment to dismiss the complaint in its entirety.

---

[1] Plaintiff voluntarily dismissed his claim brought under *Monell*, negligent infliction of emotional distress, intentional infliction of emotional distress claim, and negligent hiring, training, supervision.  (*See* Pl.'s Ltr., ECF No. 73.)

1

## UNDISPUTED FACTS[2]

The Maison Gerard Art Gallery ("Gallery") is an art gallery with two locations, one at 53 East 10th Street and the other at 43 East 10th Street between University and Broadway. (Defs.' Reply Statement of Material Facts Pursuant to Local Civ. R. 56.1 ("Defs.' 56.1 Reply"), ¶ 6, ECF No. 75.) Plaintiff was employed as an art handler manager at both locations between the Spring of 2008 and April 2016. (*Id.* ¶¶ 4, 7.)

Plaintiff had several responsibilities as an art handler manager. Plaintiff worked with and supervised several people, including David Parker, Edwin Jimenez, John Acosta and Jerome Soule. (*Id.* ¶¶ 20–29.) He also ensured the art pieces were ready to be shipped for shows and to clients. (*Id.* ¶ 8.) Like all Gallery employees, Plaintiff had access to the Gallery's computer and surveillance systems. (*Id.* ¶¶ 11, 90.) The Gallery was equipped with an alarm system that used turn off codes to disable the system, which Plaintiff had used more than twenty times while he was employed there. (*Id.* ¶ 12.) In addition, Plaintiff had access to the two sets of keys at each Gallery location. (*Id.* ¶¶ 13–14.) Plaintiff's employment with the Gallery ended sometime in April 2016, and when he left, he returned his keys. (*Id.* ¶¶ 17–18.)

On December 22, 2016, the 53 East 10th Street location of the Gallery was burglarized. (*Id.* ¶ 95.) On January 3, 2017, Detective Thomas Donegan was assigned to investigate the burglary. (*Id.* ¶ 32.) David Parker and the owner of the Gallery were at the scene when Detective Donegan arrived. (*Id.* ¶ 113.) Parker told Detective Donegan that the Gallery had been closed since December 2016 for the holidays, that the hard drive system failed to back up, and that the Gallery's IT department was looking into the issue. (*Id.* ¶ 34.) Parker also told

---

[2] The following facts are taken from the parties' statements of material fact pursuant to Local Rule 56.1 and annexed exhibits. Unless otherwise noted, the facts are undisputed.

Detective Donegan that when he arrived on the scene, he noticed some of the Gallery's hard drives and cash from a petty cash box were missing. (*Id.* ¶ 35.)

Detective Donegan did not observe any sign of forced entry into the Gallery. (*Id.* ¶ 112.) However, Donegan did locate an interior surveillance video, which depicted someone disarm the Gallery alarm around 11:55 p.m. (*Id.* ¶¶ 36–37.) Detective Donegan also found a second surveillance camera outside the gallery that belonged to New York University. (*Id.* ¶¶ 39–40.) The NYU surveillance footage showed a male wearing a black bubble jacket and black sneakers with a strip of white on the bottom unlock the security gate and enter the Gallery through the front door. (*Id.* ¶ 41–42.) The footage did not show the suspect exit. (*Id.* ¶ 118.)

Detective Donegan subsequently showed the surveillance footage to several Gallery employees. (*Id.* ¶ 45.) Edwin Jimenez, with whom Plaintiff worked every day for a few years, recognized the man depicted as Plaintiff based on his clothing and mannerisms. (*Id.* ¶¶ 22–23, 46–47; Ex. C, Donegan Dep. at 58:17–25; 59:1–15.) David Parker, who Plaintiff worked with for approximately one year, also identified Plaintiff as the man in the video. (Defs.' 56.1 Reply ¶ ¶ 20–21, 50.) John Acosta, who worked with Plaintiff for approximately seven or eight months, told Detective Donegan that when he worked at the Gallery, he saw Plaintiff wear the same black jacket and sneakers that the suspect wore on the video. (*Id.* ¶¶ 25-27, 51.) Detective Donegan documented this information in his report, which he forwarded to the Manhattan District Attorney's Office. (*Id.* ¶ 52–53.)

At some point during Detective Donegan's investigation, the Gallery Manager, Will Atkinson, informed Detective Donegan that, sometime before the burglary, Plaintiff had asked current employee, Jerome Soule, whether the Gallery would be closed for the holidays. (*Id.* ¶ 54.) And, according to Soule, he had not been in contact with Plaintiff for approximately six

3

months prior to that inquiry. (*Id.* ¶ 55.) Armed with these facts, Detective Donegan initiated an investigation into Plaintiff, (*id.* ¶ 56; Defs.' Ex. C., at 67:7–15), and directed the NYPD warrant squad to apprehend Plaintiff for the burglary at the Gallery, (Defs.' 56.1 Reply, ¶¶ 57–58). Detective Thomas Cozart, who was not involved in the burglary investigation, arrested Plaintiff on February 2, 2017. (*Id.* ¶¶ 59–61.)

Plaintiff was transported to the 6th Precinct, wearing black Puma sneakers with a white stripe. (*Id.* ¶¶ 63–64.) Because Plaintiff's sneakers appeared to match those worn by the perpetrator on the surveillance footage, they were vouchered as evidence. (*Id.* ¶ 65.) Other than arresting Plaintiff, Detective Cozart played no role in Plaintiff's prosecution. He did not sign the criminal court complaint, did not speak to the District Attorney's Office regarding the arrest, and was not involved in the decision to arrest Plaintiff. (*Id.* ¶¶ 86–88.)

On February 2, 2017, an Assistant District Attorney drafted a search warrant application and search warrant to search Plaintiff's residence. (*Id.* ¶ 66.) The search warrant affidavit contained two errors. It listed Plaintiff's termination date from the Gallery as September 2016 instead of April 2016, and it stated that that three individuals (rather than just two), identified Plaintiff as the suspect who entered the Gallery on the surveillance footage. (Defs.' 56.1 Reply, ¶ 68; Defs.' Ex. F.) Detective Donegan did not notice the errors in the search warrant application until after he signed it. (Defs.' 56.1 Reply ¶¶ 69, 129.)

Detective Donegan signed a felony complaint pertaining to the burglary that was drafted by an attorney for the New York County District Attorney's Office. (*Id.* ¶¶ 72–73.) Like the warrant, the felony complaint indicated incorrectly that Plaintiff's termination date from the Gallery was September 2016 instead of April 2016. (*Id.* ¶ 74.) On February 3, 2017, a search warrant was executed at Plaintiff's residence. (*Id.* ¶ 70.) Three portable hard drives and a black

4

bubble jacket were recovered from Plaintiff's residence during the search. (*Id.* ¶ 71.) That same day, Plaintiff was charged with burglarizing the Gallery. (*Id.* ¶ 75.) On December 22, 2016, Plaintiff was indicted by a grand jury for burglary in the third degree. (*Id.* ¶ 77.) The case proceeded to trial in July 2018, where the black jacket recovered from Plaintiff's apartment pursuant to the search warrant was admitted into evidence at the criminal trial. (*Id.* ¶¶ 83–84.) Plaintiff testified at his subsequent trial that he was at home the night of the burglary and then went to the city at 11:30 p.m. to drive for Uber. (*Id.* ¶ 107.) Plaintiff's Uber log showed that at 1:00 a.m., he was working. (*Id.* ¶ 110.) Plaintiff was acquitted in July 2018. (*Id.* ¶ 85.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant[s] are entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The movants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 23 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movant bears the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movant's claim. *Celotex Corp.*, 477 U.S. at 325. Once the movants meet their initial burden, the non-movant may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 250; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The Court is to believe the evidence of the non-movant and draw all justifiable inferences in his favor, *Anderson*, 477 U.S. at 255, but the non-movant must still do more than

5

merely assert conclusions that are unsupported by arguments or facts. *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996).

## DISCUSSION

### I. False Arrest

Defendants argue that Plaintiff cannot sustain his false arrest claim because Defendants had probable cause to arrest him. (Defs.' Mem. Supp. Mot. Summ. J. ("Defs.' Mem.") at 7, ECF No. 77.) Indeed, a plaintiff cannot prove a false arrest claim if there was probable cause to arrest him or her because "[p]robable cause is a complete defense to an action for false arrest brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (internal citation and quotation marks omitted). An officer has probable cause when he or she has "reasonably trustworthy information as to [] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Id.* (alterations in original) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)).

On the record here, there is sufficient evidence to conclude that Detectives Donegan and Cozart had probable cause to arrest Plaintiff for the Gallery burglary.[3] Two gallery employees identified Plaintiff on surveillance footage as the person seen entering the Gallery. Edwin Jimenez, Plaintiff's assistant at the Gallery, told Detective Donegan that he recognized the man depicted as Plaintiff based on the clothing and how he walked. (Defs.' 56.1 Reply ¶¶ 22–23, 46–47; Ex. C, Donegan Dep. Tr. 58:17–25; 59:1–15, ECF No. 76-3.) Plaintiff's coworker, David Parker, likewise identified Plaintiff as the man in the video. (*Id.* ¶¶ 20–21, 50.) Another

---

[3] A person is guilty of burglary in the third degree "when he knowingly enters or remains unlawfully in a building with intent to commit a crime therein." N.Y. Pen. L. § 140.20.

6

coworker, John Acosta, confirmed that the clothing the man in the video wore matched clothing that he had seen Plaintiff wear while working at the Gallery. (*Id.* ¶¶ 25–27, 51.) Next, the search of Plaintiff's residence revealed that Plaintiff owned a black jacket similar to the one identified by Acosta, as well as three portable hard drives like the ones missing from the Gallery. (*Id.* ¶ 70–71.) Detective Donegan also learned from his investigation that Plaintiff had keys to the gallery, knew the security access code, and had knowledge of the computer and security systems. (*Id.* ¶¶ 11–14.) Given the totality of these undisputed facts, Defendants had probable cause to arrest Plaintiff.

Plaintiff's perceived deficiencies in the search warrant do not alter the Court's probable cause determination. Relying on *Dufort v. City of New York*, 874 F.3d 338 (2d Cir. 2017), he takes issue with Jimenez's ability to identify Plaintiff by his mannerisms and clothing because he did not tell Detective Donegan that he recognized Plaintiff in the surveillance footage. (Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 6–7, 10–12, ECF No. 80.) *Dufort* has little value here.

In *Dufort*, a plaintiff, suing for false arrest after he was arrested and acquitted for homicide, argued that the police did not have probable cause to arrest him based on a suggestive witness identification. 874 F.3d at 347–48. The witness told the officers that she did not recognize the plaintiff's face, and that she could only recognize the color of his sweatshirt as similar to that of one of the assailants. *Id.* at 348. The police then placed the plaintiff in a lineup in which he was the only suspect wearing a jacket resembling the clothing the witness recognized. *Id.* The witness identified the plaintiff, again stressing that she recognized only his clothing. *Id.* The Second Circuit held that this procedure was "a paradigmatic example of an improperly suggestive lineup" and "cannot be construed as an 'identification' . . . for the

7

purposes of probable cause." *Id.* The Court found instead that the witness's statement "at most . . . confirmed . . . that [the plaintiff's] jacket was similar in color to a jacket or shirt worn by one of the assailants." *Id.* A fact that had diminished value given that similarly-clothed individuals were present at the scene of the crime. *Id.* at 348–-49.

The identification by Jimenez did not arise from a witness lineup, much less an unconstitutionally suggestive one. Instead, Jimenez determined that the person depicted in the surveillance footage looked like Plaintiff based on his mannerisms, gait, and clothing. And, while *Dufort*, found the similarity in clothing there to be less relevant to the probable cause determination there because of the number of people at the crime scene, the surveillance footage here showed only one person at the scene and there are no facts in evidence that suggest that other employees dressed similarly.[4]

Even if the Court were to accept Plaintiff's argument that Jimenez's identification could not support probable cause to arrest him, the undisputed record contains two other identifications from David Parker and John Acosta. (Defs.' 56.1 Reply ¶¶ 20–21, 25–27, 50–51.) And, it is well-established that just one positive identification may establish probable cause to arrest. *Celestin v. City of New York*, 581 F. Supp. 2d 420, 431 (E.D.N.Y. 2008) (collecting cases).

---

[4] Separately, Plaintiff argues that Jimenez could not have made a reliable identification because the quality of the video footage was poor. (Pl.'s Opp'n at 12.) While, Plaintiff's contention might undermine Jimenez's credibility as a witness, it does not negate probable cause. Detective Donegan relied on two other witness identifications, as well as circumstantial evidence of Plaintiff's access to and familiarity with the Gallery and he was not required to evaluate the credibility of the witness' ability to identify Plaintiff's features. *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury." Law enforcement officers' "function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence").

.

Plaintiff raises still another unpersuasive argument: that Defendants lacked probable cause to arrest him because Detective Donegan conducted an inadequate investigation. For example, Plaintiff contends that "Donegan did not recall inquiring if there was any animosity or bad feelings between Jiminez and [P]laintiff." (Pl.'s Opp'n at 3.) He also asserts that "Donegan had tools available to at least attempt to enhance the video, but he failed to use them." (*Id.* at 4.) In other words, according to Plaintiff, Detective Donegan could (and should) have conducted a more thorough investigation before initiating his arrest. Even if true, that fact does not operate to call into question probable cause. Indeed, "[i]t is [] of no consequence" to the probable cause determination "that a more thorough or more probing investigation might have cast doubt upon" the situation. *United States v. Manley*, 632 F.2d 978, 984 (2d Cir. 1980).

In short, there is no genuine dispute of fact that Defendants had probable cause to arrest Plaintiff and Defendants are entitled to judgment as a matter of law on Plaintiff's false arrest claim.

## II.    Malicious Prosecution

To establish a claim for malicious prosecution under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against [him]; (2) termination of the proceeding in [his] favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for [defendants'] actions." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (citation omitted). There is no dispute that a criminal proceeding was commenced against Plaintiff, and that the proceeding was terminated in Plaintiff's favor. Defendants argue, however, that they did not initiate the criminal proceedings against Plaintiff and that there was probable cause to prosecute him in any event. (Def.'s Mem. at 10–12.) The Court agrees.

*First*, to establish that Defendants initiated or continued any criminal proceeding against him, Plaintiff must show that Defendants played an active role in the prosecution, such as giving advice and encouragement or insisting that the authorities act. *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006) (quoting *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 583 (App. Div. 2d Dept. 1992)). Here, the record demonstrates only that Defendants participated in his arrest. However, an arrest without more, cannot establish the requisite initiation. *See Weiner v. McKeefery*, 90 F. Supp. 3d 17, 33, n.4 (E.D.N.Y. 2015) (recognizing that a police sergeant's signature on a civilian arrest form is insufficient to constitute an initiation of a criminal prosecution for purposes of a malicious prosecution claim).

*Second*, Defendants had ample probable cause to arrest Plaintiff, as discussed above. Probable cause may be undermined by evidence that Defendants learned of some "intervening facts between arrest and initiation of prosecution." *Thomas v. City of New York*, 562 F. App'x 58, 60 (2d Cir. 2014) (summary order). But, Plaintiff does not point to any such evidence, and the record does not support it. Moreover, in New York, the fact that the Grand Jury returned an indictment against Plaintiff creates a presumption that his indictment was procured with probable cause. *Colon v. City of New York*, 468 N.Y.S.2d 453, 456 (1983) ("[T]he trial court may not weigh the evidence upon which the police acted . . . after the indictment has issued."). To rebut this presumption, Plaintiff "must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith." *Id.* Because there is no evidence of bad faith by Defendants, Plaintiff's prosecution claim against them cannot be maintained under New York law.

## CONCLUSION

For the aforementioned reasons, Defendants' motion for summary judgment is GRANTED.[5]

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH

March 29, 2024  LaSHANN DeARCY HALL

United States District Judge

---

[5] Because Plaintiff cannot sustain his claims for false arrest and malicious prosecution under Section 1983, his state law claims for false arrest and malicious prosecution are dismissed as well. His claims against the City of New York under respondeat superior liability, also fail because "respondeat superior liability is inherently derivative of individual liability [and] the City is not liable for those claims as a matter of law." *McGrier v. City of New York,* No. 16-CV-5667 (VEC), 2019 WL 1115053, at *13 (S.D.N.Y. Mar. 11, 2019). Finally, Defendants advanced a qualified immunity defense in their summary judgment arguments, but because the Court concludes that Defendants are entitled to judgment as a matter of law on the merits, it does not reach that argument. *See Bailey v. New York City Bd. of Educ.*, 536 F. Supp. 2d 259, 267 (E.D.N.Y. 2007) ("In light of this holding [granting the defendants' motion for summary judgment], the court declines to reach the issue of qualified immunity.").